WILLARD P. PERRY v. THE PENNSYLVANIA RAILROAD COMPANY.

1.  A, by deed, conveyed to B a lot, parcel of a larger tract, "reserving the free and common use and privilege of the wharf at the westerly corner of the lot, to be improved and kept in repair at the joint expense of the said parties, their heirs and assigns." *Held*, that the obligation to improve and repair being imposed on heirs and assigns, the right reserved must by implication have the same duration and transmissible quality.

2.  A conveyed the residue of the tract to J. M. V., "with and subject to all the free and common use of the wharf * * * contained in the deed from him to B, * * * with the privileges and subject as aforesaid unto the said J. M. V., his heirs and assigns forever." · *Held*, that by force of the terms of this deed the rights of A in the wharf were made appurtenant to the premises conveyed, and that such rights passed to the grantee of J. M. V. under the designation of appurtenances.

3. The general rule is that, in case of an easement arising by prescription, the duties imposed upon the owner of the servient tenement are passive and negative—to suffer the owner of the dominant tenement to enjoy the easement and to allow him to enter and amend and repair, and also to refrain from doing any act upon his own premises which would interfere with the enjoyment of the easement.

4. Section 16 of the charter of the Delaware and Raritan Canal Company makes it the duty of the company to provide and keep in repair a suitable bridge or bridges over the canal or feeder where the canal or feeder shall intersect the farm or lands of any individual, &c. *Held*, that this section does not apply when the company acquired the land for the construction of its canal by a deed from the owner. *Brearley* v. *The Delaware and Raritan Canal Co., Spenc.* 236, followed.

On rule to show cause why a verdict for the plaintiff should not be set aside.

Argued at November Term, 1892, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and VAN SYCKEL.

For the rule, *William S. Gummere.*

*Contra, James M. Force, Woodbury D. Holt* and *Chauncy H. Beasley.*

The opinion of the court was delivered by

DEPUE, J.    The Delaware and Raritan Canal Company, by its charter passed February 4th, 1830 (*Harr. Com., p.* 275), was authorized to construct a canal from the waters of the Delaware to the waters of the Raritan, and also to supply the said canal with water from the Delaware by constructing a feeder not less than thirty feet wide and four feet deep. Power was granted to obtain lands and materials required for constructing the company's works by condemnation in case the company could not agree with the owner for the use or purchase thereof, and the canal and feeder were declared to be a public highway for the transportation of passengers or goods, commodities or produce, on payment of the established tolls.    The company located and constructed its feeder through a tract of land in the county of Hunterdon, now Mercer,

owned by Jasper S. Scudder, separating the tract into two-parts, the one lying on the northerly and the other on the southerly side of the feeder.

By a deed of conveyance absolute in terms and with full covenants of warranty, bearing date August 1st, 1832, Jasper S. Scudder conveyed to the company the strip of land on which the company constructed its feeder through the said tract. Prior to 1836 Jasper S. Scudder constructed a wharf on his land, on the northerly side of the feeder, and on the water's edge of the feeder, for use in the shipment of goods, &c. The company, prior to that time, constructed a draw-bridge over its feeder as a means of crossing the same. At each end of this bridge there was a private lane leading from a public road on the southerly side of the feeder northerly, affording a means of access from the public road over, across and beyond the bridge. The westerly end of the Scudder wharf abutted on this lane, and by means thereof access was had to and from the wharf and over and across the bridge. In 1836 a public road, called the Upper road, was opened on the northerly side of and parallel with the feeder, and about forty feet from the same and crossing the lane. Thereafter access to the wharf was had over and across the bridge, and thence by the lane to the new road, and by that road to the wharf. The construction of the wharf by Jasper on his own land on the water's edge of the feeder was acquiesced in by the company, if it was not made lawful by that provision of the company's charter which declared the feeder to be a public highway.

On the 27th of March, 1836, Jasper S. Scudder conveyed to Abner Scudder a part of the said tract on the northerly side of the feeder, containing two and eight-tenths acres, on which the said wharf was constructed. This deed contained the following reservation: " Reserving the free and common use and privilege of the wharf at the westerly corner of said lot of land (fronting 100 feet on and along said feeder and 40 feet in depth), to be improved and kept in repair at the joint expense of the said parties, their heirs and assigns." The

second and third lines in the description of the premises were from a point in the lane " opposite to the centre of the bridge, along the lane one ch. and sixty links by land of said Jasper, and thence still along his lands 34½ degrees east 2 ch. 78 lks. to the land of said Abner." By an agreement under seal, executed by Jasper and Abner, endorsed on the last mentioned deed and bearing the same date, it was agreed by the parties that ten feet on each side of the second and third lines in the deed should be opened and kept open forever and in repair at the joint expense of and by the said parties and their respective heirs and assigns to and for their free and common use and benefit, as a private way or easement appertaining in common to their respective lands.

In March, 1872, the plaintiff, by divers mesne conveyances, became the owner of that part of the Jasper Scudder tract which was situate on the southerly side of the feeder. In 1870 the Pennsylvania Railroad Company, the defendant in this suit, became lessee of the property and franchises of the canal company. The bridge was kept up and maintained by the canal company and its lessee from its construction until September, 1880, when it was closed by the defendant and the service discontinued.

This suit was begun in March, 1889. In his declaration the plaintiff counted upon a right of way to and from the public highway over and across the said feeder, unto and into a certain wharf or quay belonging to him, and over and across the said drawbridge, &c., with an averment that the defendant, on the 1st day of September, 1880, wrongfully, &c., turned off, demolished and removed the said drawbridge, and wrongfully, &c., kept and continued the said drawbridge turned off, removed, &c., until the commencement of this suit, and thereby during all the time aforesaid the plaintiff's said way was obstructed, and the plaintiff by means thereof could not, during the time aforesaid, nor can he now, have or enjoy his right of way as he of right ought to have, &c. In both counts of the declaration the gravamen of the suit is the obstruction of the plaintiff's private right of way to and

from the wharf by the removal and discontinuance of the bridge over the feeder. Under the right claimed in the declaration the plaintiff could use the bridge for no other purpose.

The plaintiff, from the time he became the owner of his lands in March, 1872, until the bridge was closed in September, 1880, never used, nor had he occasion to use, the wharf, nor does it appear that he had any occasion or purpose to use the wharf after the bridge was closed. The plaintiff had sustained no special damages, and for the interference with a right where no actual damages are sustained and there be no ground for exemplary damages, the damages recoverable are merely nominal. The jury awarded damages in $1,000. This verdict cannot be sustained.

The other questions discussed on the argument are of greater importance. They touch and concern two propositions—*first*, whether the plaintiff has a legal right or interest in the wharf appertaining to which he may lawfully claim an easement of a right of way over the defendant's feeder to and from the said wharf; and, *second*, the existence or nonexistence of a duty imposed or devolved upon the company and its lessee to maintain at their expense a bridge over the feeder in order to furnish the plaintiff the means of access to and from the wharf. These propositions will be examined in the order mentioned.

The terms of the deed from Jasper to Abner of March 26th, 1836, have been stated. By that deed the legal title was conveyed to Abner, with a reservation to the grantor of the free and common use and privilege of the wharf, which was to be kept in use and repair at the joint expense of both parties, their heirs and assigns. The obligation to improve and repair being imposed upon heirs and assigns, the right reserved must by implication have the same duration and transmissible quality.

The residue of the tract owned by Jasper was conveyed by him to John M. Vancleve by a deed dated March 29th, 1836 —three days after the deed to Abner was executed—and both

these deeds were acknowledged on the same day, May 25th, 1836, and before the same officer. The land conveyed to. John M. Vancleve was situate on both sides of the feeder, and is described as containing eighty-six acres. After the description of the premises the deed contains the words, " with and subject to all the free and common use of the wharf, roads and agreements as contained in and indorsed upon a deed lately made by Jasper S. Scudder to Abner Scudder, his heirs and assigns, together with the rights, privileges, hereditaments and appurtenances, * * * and also all the estate * * * of the said Jasper to the said tract of land, * * * with the privileges and subject as aforesaid, unto the said J. M. V., his heirs and assigns, to his and their only proper use, benefit and behoof forever." Under the deed above mentioned the rights of Jasper in the wharf were granted and conveyed to Vancleve, and by force of the terms of that deed these rights were made appurtenant to the premises and the estate thereby conveyed.

John M. Vancleve died in 1868. It appears by the charge of the judge that Vancleve during his lifetime conveyed that part of the farm which lies north of the canal to other parties. This deed is not printed among the exhibits, and its date and terms are not disclosed. Vancleve retained that part of the eighty-six acres which lies south of the canal, and after his death his executors sold and conveyed the same to Cora Vancleve February 17th, 1869, under a power contained in his will. The deed made by Vancleve during his lifetime has not been produced; it must be presumed that it contained no conveyance of his rights in the wharf. During his lifetime Vancleve used this wharf for receiving lime and manures and the shipment of stone. This use of the wharf seems to have continued from 1836, when Vancleve acquired title, until his death in 1868; and it may be inferred from the evidence that Vancleve's use of the wharf was in connection with and for the benefit of that part of the original tract which he retained. The deed by the executors to Cora made no reference to or recital of rights in the wharf. But the conveyance was of

the lands with the appurtenances. The word "appurtenances" has a technical signification which is employed for the purpose of including easements and servitudes used or enjoyed with the premises granted; and under the evidence in this case with respect to the use of the wharf by the deceased and the length of time during which such user continued, I think the easement and right of the deceased in the wharf had become so annexed to the premises conveyed to Cora as to pass with the land under the designation of appurtenances. The plaintiff acquired title by a deed from Cora dated March 20th, 1872, conveying the premises, with the appurtenances. The title acquired by this deed embraced the rights of Jasper S. Scudder in the wharf in question. Under these circumstances the plaintiff's right in the wharf lies in grant and did not arise by prescription.

There is evidence tending to show that the plaintiff's right in the wharf was extinguished by an adverse possession of the premises by the canal company and its lessee. We do not propose at this time to consider that branch of this controversy.

The other proposition relates to the right of the plaintiff and those to whose title he has succeeded, as against the defendant, with respect to the maintenance of the bridge in question.

Section 16 of the charter of the canal company provides that when its canal or feeder shall intersect the farm or lands of any individual, it shall be the duty of the company to provide and keep in repair a suitable bridge or bridges over the canal or feeder, so that the owner or owners and others may pass the same. *Harr. Com. p.* 281.

In *Brearley* v. *The Delaware and Raritan Canal Co., Spenc.* 236, it was decided by this court that the section in question did not apply where the company had acquired the land for the construction of its canal by a deed from the owner. The principle on which this decision was founded is that the company by its charter was empowered to take lands by condemnation only in case where such lands could not be

obtained by agreement with the owner, and that the sixteenth section of its charter applied only when the lands acquired were obtained by condemnation; and that where the company acquired title by agreement with the owner, the liability of the company in relation thereto depends, as was said by Mr. Justice Whitehead, not upon the provisions of the charter, but upon the contract between the parties.

The charter of the Morris and Essex Railroad Company contains a similar provision. In *Green* v. *The Morris and Essex R. R. Co.*, 1 *Beas.* 165, which was a bill to reform a deed made by the complainant to the railroad company, it appeared that the company had taken by condemnation a strip of land owned by the complainant, which intersected and separated his tract into two parts. Pending an appeal by the complainant from the award of the commissioners an agreement was made by the parties to submit the case to arbitration. After the award of the arbitrators was made, the sum awarded was paid by the company, and the complainant made and executed a deed under seal, whereby the complainant did grant, bargain, sell, convey and confirm to the company and to its successors and assigns " the right, liberty and privilege of erecting upon the said tract　*　*　*　and to take possession of, hold, have, use, occupy and excavate the same, and to erect embankments, bridges and all other works necessary to lay rails and do all other things which shall be suitable or necessary for the completion or repair of said road or roads." The bill was filed to reform the deed, or rather to enjoin the company from setting up the deed in a suit the complainant had brought against the company for not building a bridge in conformity with a section of its charter. The ground on which relief was sought was that the complainant executed and delivered the deed on the representation that the deed would not affect the complainant's right to have a bridge at the company's expense. The relief was granted, but Chancellor Williamson, in his opinion, expressed the view that the deed did not release the company from the obligation to build a bridge, for the reason that, by the description in the deed,

the company acquired no rights beyond those acquired by the award of the commissioners. The relief was granted on the ground that the company in the suit at law had pleaded the deed in bar. Brearley *v.* The Delaware and Raritan Canal Co. was not cited by the Chancellor, and Mr. Justice Brown, in delivering the opinion in affirmance on appeal, remarked that it might be questionable notwithstanding that case whether, upon a fair construction of the deed, it did release the company from its charter obligation to build bridges. In neither court was the Brearley case criticised or discussed. And the difference between the language of the deed involved in the case in 2 *Beas.* and the language of the usual conveyances of lands makes that decision in every aspect irrelevant to conveyances such as that which was the foundation of the decision in the Brearley case.

Brearley *v.* The Delaware and Raritan Canal Co. was a construction of the charter of this company. It was decided in 1843, and its soundness has never been denied or doubted. For nearly a half century the profession has acted upon and the public has acquiesced in that decision. Titles have been made and taken relying upon the rule established in that case as a rule of property. If the decision be unsound, which I am far from conceding, the case has stood unimpeached too long to be drawn under discussion at this late day. The deed of conveyance made by Jasper S. Scudder to the canal company brings this case within that decision.

The plaintiff's case cannot be sustained under this provision of the canal company's charter. Indeed, in neither count is his pleading framed upon a duty arising out of the company's charter.

The other ground upon which the plaintiff founds his right of action is that he acquired by prescription the right to compel the company at its own cost to keep up and maintain this bridge for his use.

The bridge is a drawbridge, and requires the employment of a man to manage and work the draw. Expenses of maintenance and repair, and of the employment of a man to

manage the draw, are incident to the right claimed by the plaintiff.

The evidence of an adverse user from which a right would arise by prescription as against this defendant is not entirely satisfactory. It was probably sufficient to make a case to go to the jury. The legal question which arises in cases where a right is claimed by prescription to have the easement maintained at the expense of the owner of the servient tenement is one of some nicety and was not discussed by counsel.

The general rule is that, in case of an easement arising by prescription, the duties imposed upon the owner of the servient tenement are passive and negative—to suffer the owner of the dominant tenement to enjoy the easement and to allow him to enter and amend and repair, and also to refrain from doing any act upon his own premises which would interfere with the enjoyment of the easement. *Godd. Easem.* 2, 17; *Gale Easem.* 307; *Johnston* v. *Hyde*, 6 *Stew. Eq.* 633, 644; *Goodhart* v. *Hyett*, 20 *Ch. Div.* 182, 186. There are easements incident to which the duty to maintain and repair devolves upon the owner of the servient tenement. But whether a duty of that character can be imposed by prescription, and, if so, what its precise limits are, we have not considered, the court not having the aid of the research and discussion of counsel on that subject.

The verdict should be set aside and a new trial granted.