DAVID H. MITCHELL, PLAINTIFF IN ERROR, v. ANNIE W.
D'OLIER, DEFENDANT IN ERROR.

Argued June 20, 1902—Decided November 17, 1902.

1. A deed of conveyance made by the owner of a tract of land upon
   a portion of which was located a fresh-water lake, by which deed
   he conveyed to the defendant a portion of the upland adjoining
   the lake, "together with" certain rights and privileges to be exer-
   cised upon the waters of the lake by the grantee, her heirs and
   assigns. *Held*, to grant those rights and privileges as appurtenant
   to the upland and not in gross.
2. Incorporeal rights thus held as appurtenant to land will pass
   upon a conveyance of the dominant tenement although not men-
   tioned in the deed of conveyance.
3. What will pass by certain descriptive words in a grant will be
   excepted by the same descriptive words in an exception.
4. Every purchaser of land takes title subject to any defects, reser-
   vations and exceptions that are referred to in the deed by which
   he acquires title, or that may be ascertained by reference to his
   chain of title as spread forth upon the public records.

On error to the Burlington Circuit Court.

For the plaintiff in error, *Samuel M. Roberts.*

For the defendant in error, *Franklin C. Woolman.*

The opinion of the court was delivered by

PITNEY, J. This was an action of tort brought to recover
damages for an alleged unlawful entry upon a tract of land

covered with water and cutting and carrying away ice there-
from. The defendant justified under an express grant from
a former owner of the *locus in quo*. The case was tried before
Honorable James H. Nixon, Circuit Judge, without a jury.
He rendered judgment in favor of the defendant, and the
plaintiff having taken exception to that conclusion now asks
for a reversal. The following are the essential facts found by
the trial court: The *locus in quo* is a fresh-water lake, located
within a tract of one hundred and eighty-one and sixty-two
hundredths acres of land, which, on and prior to November
17th, 1890, was owned in fee by one Jacob G. Fisler. On that
date Fisler executed a mortgage upon the whole tract to the
Burlington Savings Institution. On September 8th, 1894, he
conveyed to Mrs. D'Olier, the defendant, ten and fifty-eight
hundredths acres, and on September 15th, 1894, he conveyed
to her a tract of one and ninety-two hundredths acres, both
being parcels of the whole tract. These two pieces were after-
wards released by the savings institution from the lien of the
mortgage. On October 25th, 1894, Fisler and wife made a
deed of conveyance to Mrs. D'Olier, purporting to convey a
tract of fifteen and one-half acres, which included the two
pieces just mentioned and a lot of three acres besides. The
description of this tract shows that it has a frontage of about
two hundred and fifty feet upon the shore of the lake. At the
end of the description the deed contains the following words:
"Together with the right to the said party of the second part,
her heirs and assigns, to traverse the said lake or pond in
boats for pleasure or amusement only, and to fish in the waters
thereof for pleasure and not for profit, and to gather ice there-
from for her own or their own private and domestic use, but
not for sale; said right and privilege to be exercised and en-
joyed by the said party of the second part, her heirs and as-
signs, in common with the said party of the first part, his
heirs and assigns."

All the foregoing instruments were duly recorded. In the
year 1897 the Burlington Savings Institution instituted pro-
ceedings in Chancery to foreclose its mortgage, making Fisler
and wife and Mrs. D'Olier defendants. Concerning the pro-

ceedings in this foreclosure suit, the findings of the trial court disclose only this—that Mrs. D'Olier made answer praying that the lands be sold in such manner as to preserve her rights; that the execution from the Court of Chancery commanded the sheriff to sell the lands described therein (being the tract of one hundred and eighty-one and sixty-two hundredths acres) "excepting thereout the fifteen acres included in the said deed of October 25th, 1894, from Fisler to D'Olier, as fully as the same is described therein;" and that the deed from the sheriff to Howard Flanders, who became purchaser of the land when sold by virtue of the foreclosure proceedings and execution, contained the following words at the end of the description of the tract of one hundred and eighty-one and sixty-two hundredths acres: "Excepting and reserving thereout all that certain lot or parcel of ground situated, &c. (without description by metes and bounds), containing fifteen acres, conveyed to Annie W. D'Olier by Jacob F. Fisler by deed dated October 25th, 1894, and recorded in Book 313 of Deeds, page 186, as fully as the same is therein described." The sheriff's deed to Flanders was dated March 10th, 1898, and duly recorded. Subsequently Flanders conveyed the land so purchased to David H. Mitchell, the plaintiff, excepting thereout, by metes and bounds, the tract of fifteen and a half acres conveyed by Fisler to D'Olier by deed of October 25th, 1894, but omitting entirely the recital of the privileges granted in that deed. It was admitted by the parties upon the trial, and found as a fact by the trial court, that the trespass in question consisted solely in the cutting of ice by the defendant from the lake in question and storing it in her icehouse upon the fifteen and one-half acre tract for her own domestic use, and not for profit.

As thus certified to us, the facts of the case bear this aspect: the plaintiff claims title under a sheriff's sale made in execution of a decree of the Court of Chancery in a foreclosure suit to which Mrs. D'Olier and her grantor were parties, the date of the commencement of the suit being subsequent to the acquisition of her title. The presumption is, therefore, that the sheriff's deed had the effect of conveying whatever estate

and interest Mrs. D'Olier was entitled to in the lands described in the deed. If, by the terms of that deed, the *locus in quo* was conveyed without reservation of her rights of fishing, boating and cutting ice, she cannot, on the facts presented in this record, justify the trespass as an exercise of those rights. But if the sheriff's deed does not purport to cut off her rights, then there is nothing to prevent her from setting them up as a justification, relying on the deed from Fisler to her dated October 25th, 1894, as the source of her title; unless, indeed, Mitchell, the plaintiff, can claim any greater rights than those to which his grantor, Flanders, became entitled by the sheriff's deed.

From the arguments presented by the respective counsel before this court it would seem that the findings of the trial court do not include the entire history of the foreclosure proceedings in question; that those proceedings were, to some extent, irregular; that Mrs. D'Olier ceased to be a party thereto before the making of the final decree; and that the decree required the sale of the entire mortgaged premises without mention of any exception or deduction. It is admitted, however, that the writ of execution issued upon this decree commanded the sheriff to sell the *locus in quo,* excepting therefrom the land included in the deed of October 25th, 1894, from Fisler to D'Olier, "as fully as the same is therein described." In this court we are, of course, bound by the findings of the trial court upon matters of fact; and we mention the discussions of counsel only for the purpose of saying that, in the view we take of the case, the facts assumed in argument do not differ essentially from the judge's findings. For whether Mrs. D'Olier was or was not a party to the final decree, and whether that decree did or did not call for a sale of the entire mortgaged premises, the effect of the sheriff's deed is limited by the terms of the description contained in it. The trial judge accorded full force and effect to that deed; the plaintiff can ask no more.

In seeking for a solution of the problem in conveyancing thus presented, the initial inquiry may properly be whether the deed of October 25th, 1894, made by Fisler to Mrs.

D'Olier, conveyed to her the rights and privileges therein mentioned in gross or as an appurtenance of the tract of fifteen and one-half acres. And first, a word as to the nature of those rights. The right to traverse the lake in boats for pleasure and amusement only is manifestly a pure easement, being a privilege without profit. The right to catch fish, although expressly granted "for pleasure and not for profit," is none the less a *profit a prendre,* for it involves a taking of the products of the land. *Cobb* v. *Davenport,* 3 *Vroom* 369; *Albright* v. *Cortright,* 35 *Id.* 330. The right to gather ice seems to fall within the same category. For although flowing water, of which the owner of the subjacent soil has but a right of user, is treated as not being a product of the soil (*Race* v. *Ward,* 4 *El. & B.* 702; 24 *L. J., Q. B.* 153), and so a right to take such water is but an easement, yet it seems plain the right to take ice must be considered a *profit a prendre. Huntington* v. *Asher,* 96 *N. Y.* 604; 48 *Am. Rep.* 652; 15 *Am. & Eng. Encycl. L.* (*2d ed.*), tit. "*Ice,*" 909.

The fact that the grant *sub judice* is expressly limited to the private and domestic use of Mrs. D'Olier and her heirs and assigns, and excludes the selling of the ice gathered, does not touch upon the distinction between an easement and a *profit a prendre.* The limitation is upon the extent to which the right may be enjoyed, and is in the nature of a stint. It may amount to a condition subject to which the right is to be held, but does not change the nature of the right itself.

In the courts of England it seems to be established that a private easement can only be held as appurtenant to a dominant tenement, and that an easement granted to an individual in gross amounts to no more than a personal license, so that, although the grant be accompanied by words of inheritance, the privilege conferred enures only to the personal benefit of the grantee, and dies with him. *Ackroyd* v. *Smith,* 10 *C. B.* 164; 19 *L. J., C. P.* 315; 14 *Jur.* 1047; 10 *Eng. Rul. Cas.* 1; *Gale Easem.* 8, 14; *Godd. Easem.* (*Benn. ed.*) 6, 10; *Washb. Easem. & Serv.* *8; 10 *Am. & Eng. Encycl. L.* (*2d ed.*), tit. "*Easements,*" 402, 409.

In some of the American states, notably in Massachusetts,

the distinction between a pure easement and a *profit a prendre* seems to have been lost sight of. As a result, it has been held that a mere private easement may be held in gross, as an incorporeal hereditament, without a dominant tenement to support it. *Goodrich* v. *Burbank,* 12 *Allen* 459.

The English rule seems to be well founded both in reason and authority. It forbids, in ordinary circumstances, the existence of a private easement in gross. The "rights of way" of a railroad company and the right to divert water, as held by an aqueduct company, stand upon a footing of their own; such rights being, by express legislative sanction, annexed to the franchise in whose aid they are held.

Passing now to the right of *profit a prendre,* we observe that, in *Cobb* v. *Davenport,* 3 *Vroom* 369 (at *p.* 389), Mr. Justice Depue, speaking for the Supreme Court, said: "The right of fishing, being a *profit a prendre* in another's soil, as distinguished from an easement, cannot be claimed by custom, but must be prescribed for in a *que estate.*" A similar expression was made use of by the same learned justice in a later stage of that case. 4 *Id.* 226. And it also appears in an opinion read for this court in *Albright* v. *Cortright,* 35 *Id.* 330 (at *pp.* 333, 336). The form of expression—that a *profit a prendre* must be prescribed for in a *que estate*—seems to have originated with Chief Justice Lord Kenyon in *Grimstead* v. *Marlowe,* 4 *T. R.* 718, and is repeated in *Washb. Easem. & Serv.* *80. See, also, *Ackerman* v. *Shelp,* 3 *Halst.* 125.

If the statement quoted were an accurate expression of the law, it would dispose at once of the question now before us, for to say that a given incorporeal hereditament must be prescribed for in a *que estate,* is tantamount to saying that it cannot be held in gross, or otherwise than as appendant or appurtenant to a dominant tenement. Were this true, we must conclude that a grant of privileges, such as were granted to Mrs. D'Olier, could not be made to her and her heirs unless it were annexed as an appurtenance to land.

The rule as expressed in Cobb *v.* Davenport, however, is not quite accurate. The distinction there under discussion was that between a public or common right in the nature of a pure

easement, which might at common law be claimed either by custom, dedication. or prescription, and a *profit a prendre* which, whether claimed by the public or by an individual, could not be claimed by custom or dedication, but must be acquired either by grant or by prescription which presumed a grant long since made and lost. In emphasizing the point that so substantial an interest in the soil as a right to partake of its products must, if claimed under evidence of long user, be prescribed for—that is, supported by a user as definite as if it had been exercised under a grant made by deed—the distinction between the different modes of prescription was lost sight of. It is true, as already shown, that at least according to the English decisions an easement such as a right of way or the like, if held in private ownership, must be appurtenant to a dominant tenement, and so, if claimed by prescription, it must be prescribed for in a *que estate.* But there were other modes of prescription. Blackstone in one place mentions two modes, viz.: (1) prescribing in a man and his ancestors, and (2) prescribing in a man and those whose estate he hath, which latter is called prescribing in a *que estate.* Coke mentions a third mode, viz., prescribing in a body politic or corporate and their predecessors. *Co. Litt.* 113, *b,* 121, *a;* 2 *Bl. Com.* 264, 265; *Com. Dig., tit. "Prescription," A. & H.; Id., tit. "Pleader,"* E 23, E 24.

And Blackstone himself, in discussing rights of common and how they may be acquired and held, says: "Common in gross, or at large, is such as is neither appendant nor appurtenant to land, but is annexed to a man's person, being granted to him and his heirs by deed, or it may be claimed by prescriptive right, as by a parson of a church or the like corporation sole. This is a separate inheritance, entirely distinct from any landed property, and may be vested in one who had not a foot of ground in the manor." 2 *Bl. Com.* 34.

While it is thus clear that a *profit a prendre* may be held in gross, it is none the less true that such a right may be held as an appurtenance to land. The terms of the deed from Fisler to Mrs. D'Olier are such as to render the question of construction easy, after the preliminary discussion that, has

just been had. We observe at once that there is no separate grant of the rights and privileges in question; they are inserted in the deed immediately after the description of the tract of fifteen and one-half acres, and to that description they are joined by the words "together with," words importing a close and inseparable union. And a significant circumstance is this—that the twelve and one-half acres of land previously conveyed to Mrs. D'Olier are again included in this conveyance, a circumstance for which no explanation is offered unless it evidences a purpose to make the rights and privileges an appurtenance of the entire tract of fifteen and one-half acres and of every part thereof. Finally, the clause granting the rights and privileges plainly evinces an intention that all the rights shall be enjoyed not only by Mrs. D'Olier, but by her heirs and assigns, yet a pure easement (the boating privilege) is grouped together with rights of *profit a prendre,* while, as already appears, in order to be heritable and assignable, an easement perhaps *must,* and a *profit a prendre* certainly *may,* be held as appurtenant to land.

For these reasons we are clearly of the opinion that the rights and privileges in question were granted to Mrs. D'Olier, not in gross, but as an appurtenance of the fifteen and one-half acre tract.

Being thus annexed, the incorporeal hereditament becomes so inseparably connected with the ownership of the dominant tenement that it cannot be held and enjoyed separate therefrom, and it passes in any general description of the corporeal hereditament without express mention. This does not mean, of course, that it was not competent for Mrs. D'Olier to release her incorporeal rights to the owner of the lake or that it was impossible for those rights to be taken from her by a decree made in an action which included the owners of both the servient and the dominant tenement, if such a decree had resulted in a conveyance of the servient tenement divested of the servitude. But a deed made by Mrs. D'Olier, conveying the tract of fifteen and one-half acres, without mention of the appurtenant rights, would have passed those appurtenances as an incident to the grant of the corporeal hereditaments. *Perry* v. *Pennsylvania Railroad Co.,* 26 *Vroom* 178; *Richardson* v. *Inter-*

*national Pottery Co.,* 34 *Id.* 248; *Mart. Conv.,* §§ 93, 94; *Washb. Easem. & S.* (*3d ed.*) *25, *26, *39, *40, *47, *58, *59.

The sole purpose of a description of land, as contained in a deed of conveyance, is to identify the subject-matter of the grant. This may be done either by describing it in words at length, or by referring the reader to some other deed or record containing such a description. And where a deed in this manner refers to another deed, it has the effect of incorporating the latter deed into the description, so that what is therein described will pass. *Mart. Conv.,* § 108.

The same rules that are applicable to the identification of the subject-matter of a grant apply equally to the subject-matter of an exception. "That which will pass by words in a grant, will be excepted by the same words in an exception." *Shep. Touch.* 100. Indeed, an exception out of a grant may be treated for practical purposes as if the grant were for the whole estate, but made upon condition that the grantee should forthwith execute a conveyance back to the grantor, or to some other person designated, for the subject-matter of the exception. *Washb. Real Prop.* (*6th ed.*), § 2352; *Mart. Conv.,* § 109.

It is entirely clear that if Mrs. D'Olier, at any time after she acquired title to the fifteen and one-half acres and the appurtenant rights and privileges described in the deed of October 25th, 1894, had made a deed of conveyance to another person for "all that certain lot or parcel of ground, containing fifteen acres, conveyed to Annie W. D'Olier by Jacob G. Fisler, by deed dated October 25th, 1894, and recorded in Book 13 of Deeds, page 186, as fully as the same is therein described," her grantee would have acquired, by such conveyance, not only the tract of fifteen and one-half acres described in the Fisler deed, but also the appurtenant rights therein granted. The sheriff's deed to Flanders, which conveyed the tract of one hundred and eighty-one and sixty-two hundredths acres out of which her tract had been conveyed and upon the residue of which her rights and privileges constituted a servitude, contained an express exception of the land conveyed by Fisler to her, in the terms just quoted. It therefore had the

effect of limiting the conveyance to Flanders, in the same manner as if the deed to Flanders had been free from the exception, and he had thereupon instantly made a deed to Mrs. D'Olier in the terms quoted. In short, the title thus acquired by Flanders was subject to Mrs. D'Olier's rights in all respects.

Subsequently Flanders made a deed of conveyance to the plaintiff, in which deed Mrs. D'Olier's tract of fifteen and one-half acres was specifically described by metes and bounds as excepted from the land conveyed, but no reference was made to the rights and privileges held by Mrs. D'Olier. But the plaintiff could not, in this manner, acquire from Flanders any greater title or any higher rights than Flanders acquired under the sheriff's deed. He cannot be deemed a purchaser without notice, for it is established that every purchaser takes title subject to any defects, reservations and exceptions that are referred to in his deed, or that may be ascertained by reference to his chain of title as spread forth upon the public records. *Sheppard* v. *Hunt,* 3 *Gr. Ch.* 277, 294; *Van Doren* v. *Robinson,* 1 *C. E. Gr.* 256; *Brewer* v. *Marshall,* 4 *Id.* 537, 541; *Wallace* v. *Silsby,* 13 *Vroom* 1; *Fitzgerald* v. *Faunce,* 17 *Id.* 536, 598; *Roll* v. *Rea,* 21 *Id.* 264; *Hagerty* v. *Lee,* 25 *Id.* 580, 584.

The plaintiff was charged with constructive notice of the exception as contained in the sheriff's deed to Flanders, and must either trace back the reference to Mrs. D'Olier's title therein contained, or else be bound by whatever an examination of that title would have disclosed.

The result is that plaintiff's title is subject to defendant's rights, and her entry upon the *locus in quo* in the exercise of those rights was justified.

Let the judgment under review be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, COLLINS, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM. 14.

*For reversal*—None.