Lee S. WILSON and J. L. Swaim,
Plaintiffs in Error,

v.

Sammy L. PENINGTON, Sammy L. Pennington, Oleta M. Penington, Oleta M. Pennington, W. E. Hill, Maggie Hill, Daniel Dee Muse, Flodie Alice Muse, Guy W. McGuire, and Veta F. McGuire, Defendants in Error.

No. 42277.

Supreme Court of Oklahoma.

Sept. 15, 1970.

Morgan & Williams, Guthrie, for plaintiffs in error.

Merle Smith, Guthrie, for defendants in error, Guy W. McGuire and Veta F. McGuire.

Don Manners, Oklahoma City, for defendants in error, W. E. Hill, Maggie Hill, Daniel Dee Muse and Flodie Alice Muse.

C. H. Spearman, Edmond, for defendants in error, Sammy L. Penington and Oleta M. Penington.

BLACKBIRD, Justice:

This appeal arose out of an action to quiet title to the unplatted portion of a quarter section of land described as the Southwest Quarter (SW/4) of Section 2, Township 16 North, Range 4 West, in Logan County. On this land, there are two lakes, in which local residents and others have fished for many years. The controversy precipitating this action revolved around the claims of owners of lots, in the platted portion of the quarter section, to fishing rights in one of these lakes called: "North Cedar Cove Lake", whose western portion inundates some of the quarter section's unplatted part and extends to a shore line, which, in some places, appears to be only a few feet from the platted part.

In 1956, Guy W. and Veta McGuire, the couple who then owned the quarter section, apparently realized its potential value as a fishing resort area, and began selling parcels of it, described in certain unrecorded "Purchase Contracts" as enumerated "lots". By the terms of these contracts, the lots' vendees were allowed to pay for them in installments over an extended period.

It was not until May, 1963, however, that the McGuires caused the lots to be surveyed. Soon thereafter, a plat of the subdivision, denominating it: "North Cedar Cove Lake Tracts", and bearing an "Owner's Certificate and Dedication" executed by the McGuires on June 10, 1963, was filed of record.

Daniel Dee Muse and Flodie Alice Muse, husband and wife, paid for one of the lots they purchased from the McGuires, before the other lot buyers finished paying for theirs, and obtained from the McGuires a deed to it, Lot 10, of said subdivision, which deed was filed of record the next month (July, 1963). As a part of its granting paragraph, said deed contained the following words and figures:

"As part of the consideration herein, Grantor expressly grants unto grantees, their heirs, executors, administrators and assigns, a perpetual easement for fishing and other enjoyments to both Lakes now

located on the West Half (W/2) of the Southwest Quarter (SW/4) of Section 2 * * *" (etc.)

It was not until approximately a year thereafter that plaintiffs in error, hereinafter referred to as "plaintiffs", purchased the quarter section's unplatted portion. Their deed from the McGuires, executed and delivered in June, 1964, described the land they purchased as follows:

"The Southwest Quarter (SW¼) of Section Two (2), Township Sixteen (16) North Range Four (4) West of the I.M., Less and except Lots One (1), Five (5), Six (6), Nine (9), and Ten (10), located in North Cedar Cove Lake Tracts according to the recorded plat thereof, recorded in Plat Book 3, Page 58 of Logan County, State of Oklahoma."

After plaintiffs filed the present action to quiet their title to all of the above described quarter section but the lots excepted in their deed (as hereinbefore shown) from the unplatted portion it conveyed, the owners of those lots (appearing herein as defendants in error, but hereinafter referred to as "defendants") entered the case, and, in their pleadings, laid claim to the fishing rights they alleged they had obtained from the McGuires with the purchase of their lots, and, in substance, pleaded that plaintiffs had both actual and constructive notice of their fishing rights in North Cedar Cove Lake. They asked the court to recognize said rights and, in its judgment, enjoin plaintiffs from interfering with them.

At the close of the trial, the court denied plaintiffs the relief they sought, and instead, rendered judgment for defendants on their cross-petitions, determining, in effect, that their property rights in their lands included perpetual easements "for fishing and recreational enjoyment to both lakes, * * * together with perpetual ingress and egress to and from said lakes for the peaceful enjoyment of said fishing and recreational rights and to their heirs and assigns forever."

In their present appeal from said judgment, plaintiffs concede its correctness as to

the Muses' Lot 10, but contend that the evidence fails to support it as to the other lots involved and to establish that owners of these other lots ever had the easements established, in their favor, by the judgment, or that plaintiffs, when they purchased their land, had notice of any claim thereto by these defendants; that the trial court erred in overruling plaintiffs' challenges to those defendants' pleadings and to the sufficiency of the evidence to support easements in their favor; and that the court also erred in admitting inadmissible testimony over plaintiffs' objections.

■ Much of plaintiffs' argument concerns the nature of the property right defendants claim; how fishing rights may be created and conveyed; and other matters of an academic character. The early case of Mitchell v. D'Olier, 68 N.J.L. 375, 53 A. 467, 59 L.R.A. 949, contains a helpful discussion in that regard. Also notice Title 60, O.S.1961, § 49, and Weynand v. Lutz (Tex.Civ.App.), 29 S.W. 1097. Other arguments in plaintiffs' briefs pertain to the Statute of Frauds and matters that might be pertinent, if defendants' rights against their grantors, the McGuires, were in issue. However, as we analyze this case, the crucial issue between plaintiffs and defendants is whether or not plaintiffs had notice, when they contracted to purchase their land from the McGuires, that defendants had fishing easements like the one described in the deed the McGuires had delivered to the Muses.

■ Mr. McGuire gave testimony, as a witness at the trial, from which the trial court could reasonably have concluded that when the plaintiff, Swaim, acting for himself and the other plaintiff, Wilson, went to the McGuires' home to negotiate with them for plaintiffs' purchase, he was informed of the lot owners' fishing rights, and, after Swaim had declined Mrs. McGuire's offer to show him a copy of a deed describing these rights (presumably as they were described in the Muses' Lot 10 deed), Mrs. McGuire had explained them to him orally, before he went to see his lawyer to have drafted the contract for plaintiffs'

purchase from the McGuires. In view of this testimony, it cannot be held that a finding that plaintiffs had actual notice that fishing easements went with the Peningtons', Hill's, and Muses' lot purchases would have been clearly against the weight of the evidence. Nor can it be held that the trial court's judgment, which is consistent with such a presumed finding, is contrary to the principles of law followed in such cases as Creek Land & Imp. Co. v. Davis, 28 Okl. 579, 115 P. 468, and Daniel v. Tolon, 53 Okl. 666, 157 P. 756. In the latter case, after citing our Statutes on Notice (Rev.Laws 1910, §§ 2923 to 2926, both incl., being the same as 25 O.S.1961, §§ 10 to 13, both incl.), this Court said:

" * * *

It is a general rule, independent of statute, that where such facts or circumstances are known to a person in relation to a matter in which he is interested, as are sufficient to make it his duty as an honest and prudent man to inquire concerning the rights of other persons in the same matter, and the course of inquiry thus suggested would, if followed with due diligence, lead to a discovery of rights in conflict with his own, that he will be held chargeable with notice of all that he might thus have discovered, and will not be heard to say that he did not actually know of the fact or claim in question. In such cases means of knowledge, with a duty of using them, are deemed equivalent to knowledge itself, and passive good faith will not serve to excuse willful ignorance. 21 Enc.Law, 584. The methods by which notice of prior equities or unrecorded conveyances may be given, so as to affect subsequent purchasers, are as various as the means by which knowledge or information of any fact may be communicated, or by which persons may be led to believe in the existence of such facts. * * *"

In accord with the above are numerous cases cited in 55 Am.Jur., "Vendor and Purchaser", § 685, as authority for the statement:

"A purchase with notice is considered a purchase made mala fide, and a purchaser with notice is not entitled to protection as a bona fide purchaser, but takes subject to outstanding interests, even though he may have given full value. In such case, the purchaser stands in the same position as the one from whom he purchased."

As we deem the above determination decisive of the key issue in this case, it is unnecessary to discuss the arguments on less relevant matters.

Accordingly, the judgment of the trial court is affirmed.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, WILLIAMS and LAVENDER, JJ., concur.

JACKSON, HODGES and McINERNEY, JJ., concur in result.