## DENTON and wife *vs.* LEDDELL.

1. No one can have an easement in his own lands; and if an easement exists, if the owner of the dominant or servient tenement acquire the other, the easement is extinguished.

2. But if the owner of a tract of land, of which one part has had the benefit of a drain, water-pipe, or water-course, or other artificial advantage in the nature of an easement through or in the other part, sells or devises either part, an easement is created by implication in or to the other part. And this is the case even if it is the servient part that is sold or devised. But this is confined to continuous and apparent easements.

3. The testator devised to the defendant a tract of land on which were a saw-mill, dam, and mill-pond. He devised to the complainant a farm through which the mill-stream flowed to the defendant's land. By a subsequent clause in the will, he gave to the defendant, as appurtenant to the saw-mill upon the tract devised to him, "the right to the owners of the mill at all times thereafter to raise the water in the pond till the surface of the water should reach a mark ＊ ＊ on a rock, &c." The testator directed that the lands devised to the complainant should "be subject to said right and privilege as aforesaid, and subject to such flowage and damage as might be consequent on such raising of the water." *Held,* that the defendant is restricted to the mark on the rock as the limit to which he can raise the water on the complainant's land. The clause limiting the right of flowage restricts the defendant from raising the water to the height to which it was raised by the dam at the testator's death.

4. The clause restricting the height to which the defendant may raise the water on complainant's land, does not limit the height at which defendant may keep his dam, except that he cannot keep it at any height in such state that it throws back water higher than the limit so fixed.

5. Where a question was one proper to be tried on an issue directed, if such issue had been applied for, but both parties have proceeded to take testimony at great length, and allowed the hearing to be brought on, without applying for an issue, it is the province and duty of this court to decide it, if the evidence is such that the court can arrive at a satisfactory conclusion.

6. When the fact of a nuisance is clear, especially when it is not disputed, a court of equity will interfere without a trial at law.

Argued upon bill, answer, and proofs.

*Mr. Pitney,* for complainants.

*Mr. Vanatta,* for defendant.

THE CHANCELLOR.

The complainant, Mrs. Denton, owns a farm through which a stream runs upon the adjoining lands of the defendant, William Leddell, where it is used to drive a mill. The complaint is that the defendant maintains his dam, and flows back water on the complainant's lands higher than he is entitled to do. The object of the suit is to compel him to lower both the dam and the water, and to fix and settle the height to which the water may be raised.

The complainant and the defendant both derive title to their respective lands from the will of their father, John W. Leddell, who died April 15th, 1865. The will was dated July 1st, 1859 ; the last codicil, March 18th, 1863. He had, some years before his death, put each of them in possession of the property which he devised to them, respectively. In 1850, by the direction of the testator, a mark had been made by the defendant on a rock in the stream at the upper side of the lands devised to Mrs. Denton, and on the boundary between this and the lands of Elias Vance. This mark was for the purpose of showing the height of the water at its ordinary state. A certificate of making this mark, and describing the rock and the mark, was signed by the defendant and J. B. Mellen and J. P. Sutton, who were present and aided in making the mark ; this certificate is dated October 26th, 1850.

The defendant, in the lifetime of his father, had raised the dam on the lands devised to him, so as to raise the water above the mark on the rock and above the rock itself, and had purchased from the owner of the lands along the stream above Mrs. Denton's farm, the right to raise the water on these lands. This raising was done and purchase made with

the knowledge of his father before the date of the will, and without any remonstrance by his father.

The third clause of the will devised to the defendant, among other tracts of land, the tract on which the mill, the dam, and mill-pond were. The fourth clause devised several tracts to the complainant, including the farm through which the mill-stream flowed to the lands of the defendant.

The ninth clause gave to William, as appurtenant to the saw-mill upon the lands before devised to him, " the right to the owners of the mill at all times thereafter to raise the water in the pond till the surface of the water should reach a mark made by his son William, in the presence of James Mellen and Joseph Sutton as witnesses, on a rock on the lower or east side of the road from Washington corner to the house of Mellen;" stating that this mark had been made on this rock where the surface of the stream struck and ran round said rock from time immemorial, to show what had been the height of said stream at said rock. And he directed that the lands thereinbefore devised to his daughter should " be subject to said right and privilege as aforesaid, and subject to such flowage and damage as might be consequent on such raising of the water."

The first question in the case is upon the effect of these devises. The complainant contends that the defendant is restricted to the mark on the rock as the limit to which he can raise the water on her land. The defendant claims the right to raise it to the height to which it was raised by the dam at the death of the testator, when the will took effect.

The devise of the mill lot in the third clause, standing alone, would convey, as part of the mill lot, the right to keep the water on Mrs. Denton's lot at the height at which it stood at the death of the testator, that being the time when the devise took effect. No one can have an easement in his own lands ; and if an easement exists, if the owner of the dominant or servient tenement acquire the other, the easement is extinguished. For an easement is a right in the lands of another.

But if the owner of a tract of land of which one part has had the benefit of a drain, water-pipe, or water-course, or other artificial advantage in the nature of an easement through or in the other part, sells or devises either part, an easement is created by implication in or to the other part. And this is the case even if it is the servient part that is sold or devised. But this is confined to continuous and apparent easements. This doctrine was established in England in the reign of James I., in the case of *Nicholas* v. *Chamberlain, Cro. Jac.* 150, and is well established by subsequent decisions in England and in this state. These views are considered and assented to in the opinion in this court in *Fetters* v. *Humphreys*, 3 *C. E. Green* 260, and in the opinion of the Court of Appeals where the decree was affirmed, in 4 *C. E. Green* 471.

But fixing the height to which the defendant should be entitled to keep the water in the ninth clause of the will, although it does not expressly limit that as the height, must be held to limit the right to that height by implication. This implication is raised by the maxim *expressio unius est exclusio alterius.* This has been applied in many cases to limit the effect given by construction to grants and devises, as in the present case. In *Hare* v. *Horton*, 5 *Barn. & Ad.* 715, the Court of King's Bench so limited the effect of a mortgage. The mortgage conveyed an iron foundry and dwelling-houses, with the appurtenances, and enumerated afterwards the fixtures in the dwelling-houses. Had it not been for this enumeration the mortgage of the iron foundry would have carried with it all the tools and fixtures, including the steam engine, cranes, and presses fixed in the earth and walls, but these were held excluded by reason of the enumeration of the grates, boilers, bells, and other fixtures in the two dwelling-houses, and the brew-house thereto belonging. In *The King* v. *Sedgley*, 2 *Barn. & Ad.* 66, the same doctrine was applied to a statute. In *Sprague* v. *Snow*, 4 *Pick.* 54, the doctrine was applied to a case much like the present. A grant of enough of the water of a stream for the use of a fulling mill was held to limit the grant of the water to that

quantity, although the whole of the stream would otherwise have passed by the grant in the same conveyance of the land which included it. In *Hiscox* v. *Sanford*, 4 *R. I.* 58, the same application is made of the doctrine.

The effect of an express covenant in a deed or lease in limiting any implied covenant which might else arise, is well established. *Nokes' case*, 4 *Rep.* 80; *Merrill* v. *Frame*, 4 *Taunt.* 329; *Rawle on Covenants for Title* 356, (*ed.* 1860, 483.) I think there is no room for doubt on this question. There is no necessity, where the rule of law is clear, of sending the question to a court of law, or requiring the decision of a court of law in the case.

A second question arises as to the mark on the rock referred to in the will. The complainant asks that a certain mark on the rock be established as the mark referred to in the will, and as the limit of the height of the water. Although the defendant does not deny in his answer that this is the mark, he disputes it in his own testimony, and that of several witnesses. There is no dispute as to the identity of the rock. The defendant contends that the mark referred to in the will and in the certificate signed by him, was made on top of the rock, on a part that has since scaled off. The complainant contends that it is the mark now on the northwest corner of the rock. This is a mere question of fact. The testimony is contradictory. I think, by the clear weight of evidence, the mark now on the rock is the mark referred to in the will.

*First.* It corresponds with the description of the mark in the certificate. That is signed by the defendant, who made the mark, and he admits the certificate to be genuine and signed at the time; this describes the mark as on the northwest side and end of the stone, and a mark upward, about three inches from the end of the mark. The stone is nearly in the shape of an oblong parallelogram, one of its longer sides having the direction of a little east of north, so that this side is substantially the northwest side; it is the only one that can be called the northwest side. The mark begins on

Denton *v.* Leddell.

this side and is cut round the northwest corner and continued upon the end of the stone; the corner is not angular, but .worn round; the mark has an upward mark, about three inches from its end. This mark answers, in every respect, the description in the certificate. On the other hand, the place where the mark is located by the defendant is where there is a scale broken off on the top of the rock near its centre. The top of the rock is not a plane or exactly flat, but it is so nearly flat that this spot could never have been described as the side or end of the rock, much less as the northwest side of the rock.

*Secondly.* The two attesting witnesses, Mellen and Sutton, who were especially called there as such, to see the mark made so as to identify it, testify that this is the mark, and give satisfactory reasons for their certainty. They both resided near the rock, and it could hardly have been altered so as to deceive them, without their knowledge. The mark made in their presence was on the corner, several inches below the top of the rock. The rock is a hard boulder, of that species of granite known as syenite, worn into its present condition by the attrition of probably some thousands of years, and, although it might be possible by cutting and grinding and attrition with sand, to wear down the top of this rock so as somewhat to resemble the appearance which the elements had given it, I think it would be almost impossible to deceive the experts who have examined it, and quite impossible to do this without attracting the attention of the neighbors. The complainant, Jonas Denton, the husband of Mrs. Denton, the devisee, was present at making the mark, and knew its object. He lived on this farm of his wife from 1848 to 1860, and superintended its cultivation. He drew the certificate, and testifies that it described the rock and mark correctly; he also is confident that the mark now there is the same. Thomas H. Vance was the son of the adjoining owner, and lived with his father, and worked on the farm at the time the mark was made; he examined it the day it was made; he was interested for his father's farm, and testifies

without doubt that the mark is the one there now. He also measured the distance of the mark below the top of the rock by measuring the distance of both from the surface of the water when both were overflowed; he testifies that the mark was *then* from eight to ten inches below the top of the rock; this is as the mark is *now*.

The evidence of the defendant and several of his witnesses, who think that this is not the mark made in 1850, does not in my mind countervail or shake this testimony. The matter occurred to the defendant after the filing of his answer. His theory is that the mark which he made was on the top of the rock, where a scale of a foot in length by five or six inches wide appears at some time to have broken off the rock. This scale was about five-eighths of an inch thick at one edge, and tapered to a sharp edge at the other. It is possible that a mark could have been cut in this scale, but it is hardly possible that intelligent men should, in a certificate intended to be evidence, or to refresh their recollection as witnesses, have described this mark as on the side and end of the rock, if made on top of the scale.

This question was, perhaps, a proper one to be tried on an issue directed, if such issue had been applied for; but both parties having proceeded to take testimony at great length, and allowed the hearing to be brought on without applying for an issue, it is the province and duty of this court to decide it, if the evidence is such that I can arrive at a conclusion satisfactory to myself. I am entirely satisfied that the mark now on the rock is that made by the defendant in 1850, and that described in the certificate and referred to in the will. It must, therefore, upon the principle of law above stated, be the limit of the height to which the defendant is entitled to raise the surface of the water in the pond.

That the dam of the defendant raises the surface of the water in the pond higher than this mark is hardly disputed. It is charged in the bill, and is not denied in the answer. The evidence clearly shows that it has been kept so ever since the death of the testator. Where the fact of a nuisance is

clear, especially when it is not disputed, a court of equity will interfere without a trial at law. This has been repeatedly held in this court. In the case of *Carlisle* v. *Cooper*, 4 *C. E. Green* 256, and in the same case, on appeal, 6 *C. E. Green* 576, this doctrine was acted upon, and the cases in which it was adopted are there referred to and commented on.

The right of the complainant is only as to the height of the water on her own land. And the right fixed by the will is only as to the height of the water in the pond flowing back over complainant's land; it has no reference to the dam or its height. If the defendant does not raise the water on her land above the lawful height, it is no concern of hers how high his dam is; but on the other hand he cannot keep his dam at any height, in such state that it throws back water higher than that mark. This was so held and decided in Carlisle *v.* Cooper.

There must, therefore, be a decree for the complainant, that the defendant is not entitled to raise the water in his millpond higher than the mark in the rock referred to in the ninth clause of the will of his father; and that the mark now existing on said rock is the mark referred to in the will, and is the limit of the height to which the defendant may raise the water at the upper line of the complainant's land; and that the defendant be forever restrained and enjoined from keeping or maintaining his dam at such height as will, in the ordinary state of the water, raise the water in the stream at that line, higher than the mark now existing at that rock.