By this action the plaintiffs seek an injunction to prevent the defendants from continuing the business of renting, to the general public, boats for fishing in the waters of Upper Greenwood Lake, West Milford Township, Passaic County.
The facts are not in substantial dispute. In 1932, Mirror Holding Co., a New York corporation, authorized to do business in the State of New Jersey, purchased a tract of some 1,500 acres in West Milford Township for development as a residential colony. One of the brooks flowing through the tract was dammed, resulting in the creation of a lake having an area of approximately 450 acres. The lake was named Upper Greenwood Lake. Maps of the property surrounding the lake were drawn. The tract was laid out in lots and blocks with the accompanying roads. The Mirror Holding Company has sold about 2,500 of the lots and is still engaged in selling others. In all of the deeds from the Mirror Holding Company, following the description of the property conveyed, there appears this clause:
"Together with the right to use in common with others the waters of Upper Greenwood Lake for bathing, boating and fishing."
Then, following a recital of various restrictions with which we are not concerned, there appears the following clause:
"The right to use Upper Greenwood Lake for boating, bathing and fishing is also subject to the rights of the adjoining owners to use the said waters for like purposes."
In the spring of 1933, the plaintiff, Upper Greenwood Lake Property Owners Association, Inc., was formed as a corporation not for pecuniary profit. Its membership was composed of the owners of property in the development. Its purpose was to maintain, improve and operate the lake, roads and club house at the development for the benefit of the lot holders. By deed dated September 27, 1933, the Mirror Holding Company conveyed to the plaintiff Upper Greenwood Lake Property Owners Association, Inc., the roads and park land shown on the various maps of the development; the club house *Page 541 
property and the land under the waters of the lake. This deed contained the clauses affecting the use of the waters of the lake, which have been quoted above.
The deeds by which the defendants acquired their property also contain the clauses dealing with the right to boat, bathe and fish. Since becoming property owners in the development, the defendants, Williams, Jackson, Wilshusen, Vasko and Farrell have rented boats for fishing to the general public. For a number of years the only action taken by the Property Owners Association was the posting of signs calling attention to the fact that the lake was private property. In 1945, counsel for the Association sent letters to all of the defendants except Farrell, who was not then a property owner, directing them to discontinue the practice of renting boats to outsiders. Apparently this communication was ignored.
In 1947, with the consent of the Association, a number of its members formed an organization called the Anglers Club. The club took upon itself the job of cleaning the lake and stocking it with fish. A meeting was held with the renters of boats, as a result of which it was agreed that each outsider desiring to fish should be charged a fee for the privilege, in addition to the cost of hiring the boat. Sums realized from the license fees, together with dues collected from members of the club, were used for cleaning the lake and stocking it with fish.
During 1947 the arrangement worked satisfactorily. In 1948, however, the boat owners refused to continue with the arrangement and this litigation ensued.
Plaintiff association, as the successor in title to Mirror Holding Company, is the owner of better than 90% of the soil beneath the waters of the lake, including that portion bordering the lands of the defendants. As such owner, plaintiff has the right to control the use of the waters of the lake, subject only to the right of the adjoining property owners to use the lake for boating, bathing and fishing. And the defendants, to justify their claim of right to use the lake, must show a grant, easement or license. Walden v. Pines Lake Land Co., 126 N.J. Eq. 249. *Page 542 
The defendants, of course, claim under their respective deeds from the Mirror Holding Company. The grants contained in those deeds are of the right to bathe and boat, pure easements, and the right to fish which is a profit a prendre. It is this latter grant with which we are concerned. A profit a prendre may be held in gross or as an appurtenance of the land, depending upon the grant. In all of the defendants' deeds the grant of the right to fish was inserted in the deed immediately after the description of the property conveyed and was joined to that description by the words "together with." From which I have concluded that the right to fish is held by the defendants as an appurtenance of their land. And being thus annexed, it becomes so inseparably connected with the ownership of the dominant tenement that it cannot be held separate therefrom, and would pass in any general description of the property without express mention.Mitchell v. D'Olier, 68 N.J.L. 375. It follows that the defendants may not, even temporarily, transfer that right to others without a transfer of their land.
Defendants claim that the plaintiff Association is precluded by its conduct from asserting its right to control fishing. Except as hereinafter noted, I cannot agree with them. Estoppel embodies the doctrine that one shall not be permitted to repudiate an act done or position assumed where that course would work injustice to another who, having the right to do so, has relied thereon.N.J. Suburban Water Co. v. Harrison, 122 N.J.L. 189. As to the answering defendants, with the exception of Farrell, the testimony is that immediately upon acquiring their property they each engaged in the business of renting boats to the general public. They did not seek the consent of the Association nor did they attempt to have their rights determined. From time to time they were made aware of the fact that the Association disputed their right to rent boats to the general public. This notice came to them orally, by means of signs and finally through a letter from the Association's attorney. They chose to ignore the warnings. The failure of the Association to actively assert its rights under those circumstances will not *Page 543 
give rise to an estoppel. Nor will the participation of the plaintiffs in the licensing plan be construed as conduct such as would work an estoppel. If anything, the licensing agreement was a recognition of the rights plaintiffs seek to enforce.
The situation of the defendant, Farrell, is different. The testimony is that after he purchased his property in 1946 he went to the plaintiff association, told its officers of his plan to rent boats and they gave him permission to do so. Thereupon he erected a dock according to specifications given him by the plaintiff and had boats built at a cost of some $2,000. In view of these facts I am of the opinion that the plaintiffs are precluded from asserting their rights against Farrell. N.J.Suburban Water Co. v. Harrison, supra.
An injunction will go against the defendants, Jackson, Williams, Wilshusen and Vasko for the reasons stated above. As to the defendant, Farrell, the prayer for an injunction will be denied.
The defendants Grozing, Shute, Speight and Sheehan did not answer. However, no proof of any sort was offered against them and an injunction as to them will not be granted.
Judgment accordingly.