ATLANTIC CITY NATIONAL BANK et al., complainants,

*v.*

ANDREW P. WILSON et al., defendants; ATLANTIC CITY LUMBER COMPANY, appellant.

[Argued February 5th, 1931. Decided April 24th, 1931.]

On appeal from two orders of the court of chancery advised by Vice-Chancellor Ingersoll, whose opinion is as follows:

"On May 27th, 1929, I filed an opinion in this matter as follows:

'The supplemental brief filed by one of the solicitors for Satanov states the facts as follows:

"This is a contest over the disposition of two funds arising out of mortgage foreclosure proceeds—one fund in the hands of a receiver appointed in the cause and consisting of rents collected *pendente lite,* and the other being proceeds of sale of the mortgaged premises.

"The controversy is between the purchaser at the sheriff's sale, and encumbrancers whose debts were ascertained and the lien and priority thereof established by the final decree.

"The persons chiefy concerned with the controversy are Edward Nicholson, the petitioner, whose claim to the fund is based upon the fact that he purchased the mortgaged premises at the sheriff's sale and holds the sheriff's deeds; Louis Satanov, a first mortgagee; William Staiger, a second mortgagee (whose interest has been secured by Satanov); Atlantic City Lumber Company, a third mortgagee; Mason & Gaskill, judgment mechanics' lien claimants, and Atlantic City Lumber Company, holder of a judgment lien upon the mortgaged premises.

"The relation of these parties to this controversy and their respective claims to the funds arose out of the following circumstances:

"On June 5th, 1923, Andrew P. Wilson owned a parcel of land approximately one hundred and thirty-five feet front by sixty-five feet deep, on Wilson avenue in Atlantic City, and on that date he mortgaged the property in fee (by eight separate mortgages) to Satanov, to secure $80,000. These mortgages were duly recorded and on the same day assigned as collateral to Atlantic City National Bank.

"On the same day, June 5th, 1923, Wilson executed four other mortgages on the same land to William Staiger, to secure $10,000 ($2,500 each) which were also seasonably recorded.

"On June 8th, 1923, Wilson again mortgaged the land; this time to the Atlantic City Lumber Company to secure $4,500, which mortgage was likewise recorded and was a third lien thereon.

"On July 16th, 1923, Mason & Gaskill filed a mechanics' lien claim against the building and lands for the sum of $3,946.42, making the three prior mortgagees parties. Neither Satanov nor Staiger contested the priority of the lien claim, with the result that judgment by default was entered. A statutory priority of the Mason & Gaskill lien claim judgment over the first and second mortgages was thus established.

"On October 30th, 1923, the Atlantic City Lumber Company recovered a judgment against Wilson for $3,645.11.

"This left the respective priorities of the liens of the several encumbrances, at this juncture, standing as follows:

"1. The Satanov mortgage (second as to Mason & Gaskill mechanics' lien judgment).

"2. The Staiger mortgage (third as to Mason & Gaskill).

"3. The Atlantic City Lumber Company mortgage. (But with priority of lien until paid over the Satanov and Staiger mortgages.)

"4. The judgment of the Atlantic City Lumber Company.

"Subsequently a number of judgments were recovered against Wilson during the period of his ownership, and became liens on the land, but they are not involved in this controversy.

"On March 28th, 1924, the Atlantic City Lumber Company filed a bill to foreclose its third mortgage, bringing in as parties defendant Wilson, the mortgagor, and all encumbrancers subsequent to its mortgage. Neither the Atlantic City National Bank nor Satanov, nor Staiger were, nor could they have properly been included as, parties defendant. On June 26th, 1924, a decree *pro confesso* was entered. On October 15th, 1924, the master's report was made, and on June 10th, 1925, a final decree entered in the cause confirmed the master's report, ascertained the debts due the several parties complainant and defendants, and the order and priority of payment as between themselves and con-

demned the mortgaged premises to sale to raise and pay the moneys so ascertained and decreed. On August 19th, 1925, the mortgaged premises were brought to sale to satisfy this decree and were sold by the sheriff and purchased by the petitioner, Nicholson, for $5,527.73, the amount of his bid. This sum about equaled the amount decreed to complainant so that no surplus remained to be paid by the sheriff into court.

"The sheriff satisfied the complainant's decree from the proceeds of sale and by his deed transferred title to the purchaser. The lien of the third mortgage was thus extinguished, the interest of the third mortgagee and of the mortgagor passed to the purchaser, and the mortgage itself as an element for consideration on this motion has wholly disappeared from the case.

"On May 1st, 1924, a little more than two months after proceedings to foreclose the third mortgage was commenced, the Atlantic City National Bank and Louis Satanov, joined in filing a bill of complaint to foreclose the first mortgage, making parties defendant all junior encumbrancers, including Staiger, the second mortgagee, and Atlantic City Lumber Company, the third mortgagee, whose foreclosure suit was then pending. On June 17th, 1925, a final decree was made, which was filed August 19th, 1925, which decree in like manner ascertained the amounts and decreed the payment of the debts of the complainants and each subsequent encumbrancer, declares that they are entitled to have their respective debts made out of the mortgaged premises, condemns the premises to sale to make the debts so decreed, and decrees the payment thereof out of the proceeds of sale in the order of priority therein ascertained. This decree finds the amount due the defendant Atlantic City Lumber Company, and decrees its payment. Pursuant to this decree and the execution issued thereon, the sheriff, on December 3d, 1925, again sold the premises and Nicholson, the petitioner, was again the purchaser for his bid of $118,475, and in due course received the sheriff's deed. That sum was sufficient to pay the complainant's decree in full, leaving a surplus to

be applied to the payment to subsequent encumbrancers. That surplus and the rents collected by the receiver appointed in this cause, and the application thereof has occasioned the present controversy.

"Nicholson, the petitioner, claims priority of right in the distribution of the surplus money, resting his right upon the fact that he is the owner of the property by virtue of the sheriff's deed and by the force and effect of the final decree in the third mortgage foreclosure suit; Satanov, on the other hand, claims to be entitled to the surplus and rents by force of the final decree in the first mortgage foreclosure suit to the extent necessary to pay the balance of the debt decree to be paid upon the second mortgage.

"The final decree in this cause expressly provides: That the said mortgaged premises be sold to raise and satisfy the said several debts and sums of money, so as aforesaid due to the complainants and defendants, respectively, * * * that is to say, to pay and satisfy in the first place unto the complainant, Atlantic City National Bank, the sum of $6,330.21, * * *; to pay and satisfy on the second place to the complainant, Louis Satanov, the sum of $4,935.69, * * * from which is to be deducted the sum of $541.31, due Mason & Gaskill, as aforesaid, * * * which is to be paid to them; both the amounts due the complainants, Atlantic City National Bank and Louis Satanov to be paid * * * including, &c., * * *; to pay and satisfy in the third place unto the defendant, William Staiger, the sum of $4,092.50 * * * from which is to be deducted $541.31, the amount due Mason & Gaskill, as aforesaid, and which is to be paid to the said complainant, Louis Satanov; to pay and satisfy in the fourth place unto the defendant, Atlantic City Lumber Company, $630.84, * * *; to pay and satisfy in the fifth place unto William Staiger the sum of $541.31, paid to the said Mason & Gaskill as aforesaid, * * *.

"Both decrees contain the clause that: The defendants stand absolutely debarred and foreclosed of and for all equity of redemption of, in and to the said mortgaged premises when sold as aforesaid by virtue of this decree.

"Nicholson claims both funds and the basis of his claim is that he purchased at sheriff's sale the equity of redemption mortgaged to the Atlantic City Lumber Company, and that the sheriff's deed operated as an assignment of the priority of claim which that mortgage enjoyed in the decree in the Atlantic City National Bank foreclosure suit.

"The claim of Satanov is that as owner of the Staiger mortgage, he is entitled to have that mortgage satisfied in accordance with its priority as originally ascertained and ordered paid by the decree in the Atlantic City National Bank suit, and as modified by the payment of the third mortgage and the Mason & Gaskill claim, subsequent to decree."

'In *Gifford* v. *McGuinness, 63 N. J. Eq. 834,* the court of errors and appeals said: "We entirely assent to the view that any court may compel money raised by its process to be brought into court for distribution, and that from an order made for that purpose no one suffers an appealable grievance. To obtain an order merely for such payment neither written pleading nor proof is essential. The court is merely enforcing a regulation customarily dispensed with. Presumably the money will be paid as previously adjudged. The only burden will be that of notice to interested parties."

'In *Schreiber* v. *Green, 90 N. J. Eq. 333,* it was held: "Rents collected by a receiver in a foreclosure suit will be disbursed according to the order of priority ascertained by the final decree irrespective of the party upon whose application the receiver was appointed."

'As to the funds in the sheriff's hands, Chancellor Green in *Lithauer* v. *Royle, 17 N. J. Eq. 40,* stated the law to be: "The decree and execution in this case contains specific directions for the appropriation of the proceeds of sale * * *. No change in the mode of appropriating the fund can be made, excepting the opening and correcting the decree and altering the execution. This can only be done upon notice." This is still the law.

'No application has been made to amend the final decree and executions in the foreclosure proceedings in which the alleged surplus money accrues.

'It therefore follows, that upon the record as it now appears, payments of said funds must be made in order of priority as set forth in the final decree and executions.'

"On June 1st, 1929, eight supplemental petitions were filed (there being eight mortgages and proceedings thereunder) praying that the decree be amended, and that the order of paymemnt of the surplus money arising from the sale; and of money in the hands of the receiver, be corrected.

"The last brief was filed August 26th, 1929, and it became necessary to again consider the entire application.

"The sale under the Atlantic City Lumber Company's foreclosure decree, so long as it stands against the defendants, vested in Nicholson as purchaser not only the rights of the complainant under its mortgage and decree, but also all the rights of the defendants in the suit. *Wimpfheimer* v. *Prudential Insurance Company of America, 56 N. J. Eq. 585; Baldwin* v. *Howell, 45 N. J. Eq. 519, 538.*

"Such sale vests in the purchaser a legal right to the property free of encumbrances imposed upon it subsequent to the mortgage foreclosed, provided that the holders of such encumbrances are made parties to the foreclosure. *Krich* v. *Zemel, 99 N. J. Law 191.*

"It follows, therefore, that Nicholson obtained title to said premises subject only to such encumbrances as existed prior to the mortgage of the Atlantic City Lumber Company, and to any later encumbrances, the holders of which were not made parties to said foreclosure.

"Therefore, he (the purchaser) is entitled to receive from the funds in court, all surplus beyond the amount necessary to pay the encumbrances prior to the mortgage under which he first obtained title. That is, of the Atlantic City Lumber Company.

"The lien claim of Masno & Gaskill, although not prior to the Atlantic City Lumber Company, and therefore not payable by Nicholson or from funds otherwise due him, is, by virtue of the statute, prior to the Staiger mortgage, and the amount due on said liens should be paid out of the amount due under said Staiger mortgage.

"Having heretofore determined that the order of payment of this fund could not be made otherwise than by obeying the terms of a final decree in force, I will advise that the decree heretofore existing should be modified as to the order of payment and to that extent only.

"The money received by the receiver prior to the sale of Nicholson should be paid to the first encumbrance remaining unpaid out of the proceeds of the sale. Should the receiver have collected any money after the sale to Nicholson, the same should be paid to the holder of encumbrances prior to the Atlantic City Lumber Company's, if any remain unpaid. Any amount remaining after the payment of such prior encumbrance, should be paid to Nicholson."

*Messrs. Thompson & Hanstein,* for the appellant.

*Messrs. Bourgeois & Coulomb,* for the respondent.

PER CURIAM.

The order appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Ingersoll.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, DEAR, WELLS, JJ. 13.

*For reversal*—None.