**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5590-17T4

WELLS FARGO BANK, N.A.,
AS TRUSTEE FOR THE
REGISTERED HOLDERS OF
RENAISSANCE HOME EQUITY
LOAN ASSET-BACKED
CERTIFICATES, SERIES 2004-3,

      Plaintiff,

v.

GWINN WALKER, a/k/a GWINN
WALKER, SR., a/k/a GWINN R.
WALKER, SR.,

      Defendant-Appellant,

and

STATE OF NEW JERSEY
and WENDY R. WALKER,

      Defendants,

and

QUEST MGMT., LLC,

      Defendant-Respondent.

_____

Submitted April 3, 2019 – Decided August 9, 2019

Before Judges Accurso and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, General Equity Part, Hudson County, Docket No. F-038661-13.

Rachael E. Harrigan, attorney for appellant.

Christopher T. Campbell, attorney for respondent Quest Mgmt., LLC.

PER CURIAM

This is a dispute over surplus funds deposited into the Superior Court's Trust Fund Account following a sheriff's sale. Wells Fargo obtained a final judgment against Gwinn R. Walker, Sr., in a residential foreclosure action, and the mortgaged property was sold at sheriff's sale. A principal of Quest Mgmt., L.L.C., researched the property and attended the sale. Walker did not attend. Realizing the winning bid greatly exceeded the sum due on the writ of execution, Quest approached Walker immediately after the sale with an offer to buy the property, without telling him about the surplus funds.

Walker claims he did not understand why Quest wanted a deed to a property Walker no longer owned. Reasoning the property had already been lost at sheriff's sale, however, he executed a quitclaim deed to Quest in exchange for $10,000 cash two days after the sale.

Quest thereafter filed a motion with the Office of Foreclosure for the release of the $102,901.73 in surplus funds on deposit in the Superior Court's Trust Fund. Walker opposed the motion and filed a cross-motion arguing he was entitled to the surplus funds as he owned the property at the time of the sheriff's sale and "had no idea [he] was entitled to recover any surplus funds" when he signed the quitclaim deed to Quest. The Foreclosure Unit referred the motions to the General Equity judge as Quest was not an original party to the foreclosure action and the Unit could not rule on the sufficiency of the consideration paid to the owner for the quitclaim deed.

In his brief to the General Equity judge, Walker acknowledged a mortgagor can convey his post-sale right to redeem, see Lobsenz v. Micucci Holdings, Inc., 127 N.J. Super. 50, 52 (App. Div. 1974), but argued that because Quest did not redeem, any interest it held in the property was extinguished on the expiration of the ten-day redemption period post-sale, see Hardyston Nat'l Bank v. Tartamella, 56 N.J. 508, 513 (1970) (establishing the right of redemption in the mortgagor during the ten-day period fixed by Rule 4:65-5). Walker contended our courts are solicitous of the rights of mortgagors to redeem post-sheriff's sale and subject transactions purporting to convey that right to "intense judicial scrutiny." Heritage Bank, N.A. v.

Magnefax Corp., 194 N.J. Super. 376, 380 (Ch. Div. 1984).  Noting the point

of a sheriff's sale is "to afford special protection to the debtor-owner, first by

insuring the return of any equity represented by the surplus of the sale over the

mortgage debt," Carteret Sav. & Loan Ass'n, F.A. v. Davis, 105 N.J. 344, 351

(1987), Walker asserted a quitclaim deed after sheriff's sale does not transfer

the mortgagor's right to any surplus funds.

Quest's first argument to the court was that it purchased the property

"months before the sheriff's sale," thus mooting "any argument regarding

assignment of rights exclusive of the right to surplus funds."[1]  Its second

---

[1]  Walker had asserted that Quest "materially altered the deed," by saying it
was "made on 03-08-17" instead of the date of the transaction, which was
August 3, 2017 - 08-03-17.  Although the trial court judge found the
transaction occurred on August 3, she did not address Quest's insistence that
the transaction occurred "months before the sheriff's sale," instead of two days
after, or the affidavit of Quest's principal who conducted the transaction, who
averred it occurred on March 8.

Quest asserts the trial judge did not address "the confusion" over dates
"likely due to its irrelevance" as "[a] deed has little use until it is recorded,"
which this deed was on August 4, 2017.  The date of this transaction is
obviously not irrelevant.  Indeed, it is central to the equitable issues on appeal.
The date of the transaction is conspicuously absent in Quest's procedural
history and statement of facts.  We find this omission troubling, to say the
least.  That the dates were merely transposed, a readily understandable
explanation, is difficult to accept in light of what appear to be Quest's
affirmative misrepresentations to the trial court.  The Chancery judge must
make findings on this point on remand.

A-5590-17T4

argument was that "surplus funds take on the character of the land, at least with respect to junior encumbrancers whose liens existed at the time of the foreclosure," Morsemere Fed. Sav. & Loan Ass'n v. Nicolaou, 206 N.J. Super. 637, 642 (App. Div. 1986), which Quest obviously was not. From that proposition, Quest argued that "[a] successor of the mortgage acquires an interest in the surplus, wholly or in part, regardless of how he acquires his interest," citing Atlantic City National Bank v. Wilson, 108 N.J. Eq. 213 (E & A 1931).[2]

Responding to the line of cases relied on by Walker, Quest asserted Lobsenz holds there is no harm to an owner-mortgagor in allowing him to convey his right of redemption "since he is free to bargain for a fair and adequate consideration for his right to redeem, whether or not the foreclosure

---

[2] The case holds no such thing. It stands for the unremarkable proposition that following foreclosure of a junior encumbrance, the purchaser at sheriff's sale takes title subject to all encumbrances prior to the mortgage under which he obtained title and the mortgage foreclosed "wholly disappear[s] from the case." Wilson, 108 N.J. Eq. at 216, 220. The Court thus rejected the purchaser-now-owner's claim that his purchase of the property at sheriff's sale following the subsequent foreclosure of the first mortgage entitled him to the surplus ahead of intervening lienholders under a theory of equitable redemption. Id. at 218-19. Instead, the Court held the owner/purchaser is entitled to receive only the surplus beyond the amount necessary to pay the encumbrances prior to the mortgage under which he first obtained title. Id. at 220. The Court more recently reaffirmed the essential holding of Wilson in Carteret, 105 N.J. at 353-54.

sale results in surplus monies." Lobsenz, 127 N.J. Super. at 54. As to Carteret and Magnefax Corp., Quest argued the transactions scrutinized in those cases because "subject to serious abuse," Magnefax Corp., 194 N.J. Super. at 380, involved winning bidders at sheriff sale purchasing the mortgagor's right of redemption in order to obtain surplus funds otherwise due the mortgagor, not a third-party who merely attended the sale, such as itself.

Quest asserted nothing bars a mortgagor from conveying its interest in surplus funds after the period to redeem has expired and that a mortgagor might do so for a "desire for quick cash on hand, not wanting to be bothered by the process, or being in a distant country unable to access the legal system." It contended other parties had contacted Walker prior to the sheriff's sale about purchasing his interest and he "was therefore on notice that he had something worth selling." Quest concluded by arguing to the General Equity judge that Walker "could have retained an attorney to review his situation" but "chose not to," and that Quest was "the rightful owner of the surplus funds."

Relying on Mercury Capital Corp. v. Freehold Office Park, Ltd., 363 N.J. Super. 235 (Ch. Div. 2003), the General Equity judge concluded a "mortgagor may, at any time after the execution of the mortgage, by a separate and distinct transaction, sell or release his equity of redemption to the

mortgagee," id. at 251 (quoting 4 Pomeroy, Equity Jurisprudence, § 1193 at 571-73 (1941)). The judge held the quitclaim transaction constituted a valid contract and "transfer of the right to redemption is valid pursuant to Mercury Capital Corp." As the judge found Quest was the valid owner of the equity of redemption, she concluded it was entitled to the surplus funds remaining after satisfaction of the State's tax lien.[3] The judge did not address Walker's argument that equity regards transactions conveying a mortgagor's right of redemption where there are surplus funds as suspicious and subject to close scrutiny.

Walker moved for reconsideration, arguing his contract with Quest was unenforceable under the New Jersey Uniform Unclaimed Property Act, N.J.S.A. 46:30B-1 to -109, and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -210, was procedurally and substantively unconscionable and that "surplus funds are not real property and cannot be transferred by Quitclaim

---

[3] The State of New Jersey filed a cross-motion for release of surplus funds due the Division of Taxation. The court's final order directed that $12,882.93 of the surplus be disbursed to the Treasurer, State of New Jersey. Walker does not appeal from that aspect of the order.

A-5590-17T4

Deed." He argued Quest is "not a purchaser for value. It is a con artist who victimized an elderly man[4] and attempted to steal his life savings."

Quest opposed the motion objecting to any new legal arguments, which it claimed were without merit in any event. As to unconscionability, Quest reiterated its earlier argument that "a seller in this situation may wish to rid themselves of the burden of the property, may want cash up front quickly, rather than wait for the months-long surplus funds application process," and such "was Walker's decision."

Quest, although conceding it was aware of "the amount of the surplus funds available to all potential holders" when it approached Walker after the sale, noted the amount due the State of New Jersey on its tax lien was unknown. It also claimed there was the possibility the winning bidder would not complete the purchase, and the amount of the surplus funds could diminish at a future auction "while liability for any loss or injury incurred on the property would fall to Quest." Because of the "far too many factors and contingencies that could change its value," and that Quest could not "know exactly what the terms of the sale would yield" at the time of the transaction, it

---

4 Walker was seventy-one when he executed the quitclaim deed.

A-5590-17T4

argued "Walker has not proven . . . the exchange of obligations so one-sided as to shock the court's conscience."

The General Equity judge denied the motion for reconsideration without hearing argument. The judge found the Unclaimed Property Act did not apply because the quitclaim deed was not an agreement "to locate, deliver, recover, or assist in the recovery" of property so as to bring it within the Act. Applying the standard of Rule 4:6-2 to Walker's arguments on the motion,[5] the judge found that "[a]side from [Walker's] broad and general contentions that Quest's retention of over 90% of the surplus funds violates the [Consumer Fraud Act]," he had failed to plead a consumer fraud claim. The judge further found that "Quest's retention of over 90% of the surplus funds does not prove that Quest engaged in the practice of deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact" with the intent that Walker rely. The judge found that the amount of the State's lien was not known at the time of the transaction, and thus the exact amount remaining for distribution from surplus funds unclear.

---

[5] Although we have no need to address application of this standard to arguments raised in opposition to a motion for release of surplus funds, we note motion papers are not ordinarily considered pleadings under our Rules. See R. 4:5-1(a); Lahue v. Pio Costa, 263 N.J. Super. 575, 597 (App. Div. 1993).

A-5590-17T4

Relying on the certification submitted by Quest's principal, the judge further found that whether Quest would exercise the right to redeem was also unknown at the time of the transaction. The judge concluded the "mere fact that the amount of the surplus funds left over after the New Jersey lien was enforced does not evidence that Quest engaged in the practices prohibited under N.J.S.A. 56:8-2."

After thoroughly exploring the statutory claims, the judge engaged in a lengthy discussion of surplus funds as real property, reconfirming her earlier decision that the quitclaim deed transferred all of Walker's rights in the property, including the equitable right of redemption.

Although substantively addressing every other argument Walker raised on reconsideration, the General Equity judge declined to consider Walker's argument that the transaction was procedurally and substantively unconscionable. Stating that Walker "did not raise a defense of unconscionability until the instant Motion for Reconsideration, and . . . fails to provide reasoning or evidence that this argument could not have been provided on the first application to the Court," the judge concluded it "[could not] consider the unconscionability defense set forth for the first time in a Motion for Reconsideration under R. 4:49-2, pursuant to Lahue." 263 N.J. Super. at

A-5590-17T4

579, 597-99 (declining to permit a party to raise the affirmative defense of the Statute of Frauds on a motion for reconsideration after a three-day trial on the enforceability of an oral settlement as equity will not permit use of the Statute of Frauds to accomplish a fraud).

Walker appeals, reprising the arguments he made to the General Equity judge.

Having reviewed the record, we conclude the order releasing surplus funds to Quest cannot stand. The quitclaim transaction entered into two days after the sheriff's sale, when it was clear to Quest, but not to Walker, that there was over $100,000 in surplus funds owing to Walker, did not get the close judicial scrutiny equity demands of such transactions.

The filing of a foreclosure action "does not extinguish the mortgagor's interest in the encumbered property." Borough of Merchantville v. Malik & Son, LLC, 218 N.J. 556, 566 (2014). The mortgagor has historically possessed the right to satisfy the debt and obtain fee simple ownership of his premises free of the mortgage at any time before entry of judgment. Id. at 566-67. This right to redeem the property is a favored right in this State, "not fashioned by nor dependent upon statute," but "created and 'devised by equity to protect . . .

[the mortgagor] from the forfeiture of his title.'" Lobsenz, 127 N.J. Super. at 52 (second alteration in original) (quoting Hardyston, 56 N.J. at 513).

The Supreme Court in Hardyston acknowledged "[t]he situations are probably rare in which a mortgagor can profitably assert a right to redeem after the sheriff's sale." 56 N.J. at 513. It nevertheless determined "the just course" was to extend the right in New Jersey so as "to permit the mortgagor to redeem within the ten-day period fixed by R. 4:65-5 for objections to the sale." Ibid. A mortgagee "may obtain a relinquishment of the right of redemption" but may not do so "in the mortgage instrument or by a contemporaneous agreement," so solicitous are our courts of this right in the mortgagor. Dorman v. Fisher, 31 N.J. 13, 15 (1959) (citing Pomeroy, § 1193 at 569).

There is no doubt but that a mortgagor can convey his right of redemption. Lobsenz, 127 N.J. Super. at 52. The Court has described it as "[t]he value of the land above the loan," "a valuable right that came to be seen as an equitable estate in land that was alienable, devisable, and descendible." Carteret, 105 N.J. at 347. As the Hardyston Court acknowledged, however, redemption after sheriff's sale is rare. 56 N.J. at 513. "Even in a case of voluntary assignment" of the right of redemption "'intense judicial scrutiny is warranted.'" Carteret, 105 N.J. at 349 (quoting Magnefax Corp., 194 N.J.

Super. at 380).  When the transfer is after a sheriff's sale that has generated surplus funds, the potential for abuse is obvious.[6]  As the Supreme Court has noted, "[w]hile mortgagors are often legally and financially innocent people, 'afficionados of sheriff's sales are not always solicitous of the rights of debtors.'"  Id. at 350 (quoting Magnefax Corp., 194 N.J. Super. at 380).

We do not address the various legal claims Walker raises on appeal, even those that appear dubious to us.  Attempting to address the legal issues raised on this appeal in a factual vacuum will not be fruitful.  See Palamarg Realty Co. v. Rehac, 80 N.J. 446, 460-61 (1979) (declining to address an issue with "potentially far-reaching effects in a factual vacuum.").  We are satisfied that Walker clearly articulated in his opposition to Quest's motion to release surplus funds that the transaction was unconscionable.  Quest asserts it was fair and above board.  That dispute could not be resolved without a hearing.

---

[6] We note that following briefing and oral argument, the Supreme Court amended Rule 4:64-3 effective May 1, 2019, to require an applicant for surplus monies in the custody of the Superior Court Trust Fund to submit a certification with, among other things, proof that the applicant is the party named in the foreclosure action, unless proceeding under Rule 4:64-3(b), R. 4:64-3(c)(1)(B), and a recital of the property's ownership at the time of sheriff's sale, R. 4:64-3(c)(1)(E).  If the owners at sheriff's sale were different from the individuals executing the mortgage, the applicant is to attach "the documents showing how the ownership interest was created."  R. 4:64-3(c)(1)(E).

Even if we were not convinced that Walker raised unconscionability on the motion, we would not hesitate to address the issue on appeal. Quest is seeking the release of funds from the Superior Court's Trust Fund account following a judicial sale of the mortgaged premises in a residential foreclosure. We would be hard put to imagine a matter more directly implicating the public interest. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

We accordingly reverse the order releasing the surplus funds to Quest[7] and remand for an evidentiary hearing. We can offer no better direction for the conduct of that hearing than that offered by former Appellate Division Judge Richard S. Cohen when serving in General Equity:

> The chancery judge should review such applications carefully. The transfer by a mortgagor of his clear right to payment of a fixed amount of money for something less than its equivalent is such an odd event that it should arouse skepticism about the fairness of the transaction and the mortgagor's understanding of its significance. The assignment should not be approved unless the court is fully satisfied that the mortgagor who assigned his right to redeem did so knowledgeably and for fair consideration.
>
> [Magnefax Corp., 194 N.J. Super. at 380-81.]

---

[7] We note those funds were deposited into Quest's counsel's trust account pending final order of the trial court. We were not advised of their disposition pending appeal. If the funds have been released to Quest, the Chancery judge should address the matter immediately on remand.

A-5590-17T4

Reversed and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION